# BARBER *v.* JOHNSON.

### BUILDING CONTRACTS ; CONDITIONAL ACCEPTANCE.

Where a contractor gave an order on materialmen for material to be used in the construction of a dwelling house, which order was accepted by the owner, payable out of the final instalment of the contract price, conditionally upon the performance by the contractor of all the conditions of the building contract, and the contractor failed before the final payment became due, so that the owner was compelled to complete the dwelling at a cost to him greater than the contract price, it was *held*, in a suit by the materialmen, that the owner was not liable on such acceptance.

No. 351.  Submitted January 10, 1895.  Decided February 5, 1895.

HEARING on an appeal by the plaintiff from a judgment upon an agreed statement of facts in a suit upon an acceptance of an order for material furnished in the construction of a dwelling house.  *Affirmed.*

The COURT in its opinion stated the case as follows :

This is a suit at common law, which was instituted in the year 1885, and which, after having been referred to a referee, whose award was ultimately vacated upon exceptions, was at last tried by the court below upon an agreed statement of facts, on which judgment was rendered for the defendant. From that judgment the plaintiffs have appealed.

The purpose of the suit was to recover the amount of a conditional acceptance for the sum of $400, given under the following circumstances: The appellee, Ralph C. Johnson, on May 10, 1882, entered into an agreement with one Julian P. Baldwin, a builder and contractor, whereby the latter agreed to build a house in the city of Washington, for the appellee, in accordance with certain plans and specifications, for the stipulated sum of $12,500, to be paid in nine several

5 Ct. App.—20

instalments of different amounts, of which the eighth and ninth only need to be mentioned here—the eighth being for $1,500, and the ninth for $500. The contract contained two provisions that are important in the determination of the present controversy. One of these was to the effect that, in the case of each payment, the contractor should procure from the architect a certificate that the amount was properly due and payable in accordance with the plans and specifications; and that, before the ninth or final payment should be made a certificate should be procured from each subcontractor that there were no liens or claims against the property or on account of the contractor. The second was, that if the contractor should become bankrupt, or fail or refuse to prosecute the work properly, the appellee might immediately take possession of the premises and terminate the contract, and might proceed to finish the work himself; and that thereupon all claim of the contractor should cease; but that, if there were any balance remaining after completion " in respect of any work done during the time of the defaulting contractor," the same should belong to the persons legally representing him.

The work was begun, and seems to have proceeded satisfactorily until December 15, 1882, when the seventh payment was made, the aggregate payments then being $10,500. But about this time trouble arose; and the appellants, Barber & Ross, who had furnished Baldwin with a small amount of material on credit, declined to extend any further credit until they received some kind of security. Thereupon Baldwin gave them an order upon Johnson, the appellee, which the latter accepted conditionally and returned to the appellants with such conditional acceptance indorsed thereon. This order and the acceptance were in the following terms:

"Washington, D. C., Dec. 6th, 1882.

" Mr. R. C. Johnson:

"Please pay to Messrs. Barber & Ross, No. 1014 Penn. Ave., the sum of four hundred dollars at the time the last pay-

ment on your house, No. 1735 I St., N. W., becomes due, and deduct the same from said payment.

(Signed) " JULIAN P. BALDWIN."

"Accepted for payment as above, subject to the conditions of the building agreement between said Johnson and Baldwin being fulfilled, as therein set forth. Richmond, Va., Dec. 12, 1882. (Signed) R. C. JOHNSON."

On December 13, 1882, subsequently to this acceptance, the appellants furnished materials to Baldwin of the value of about $350.

On December 22, 1882, one Samuel S. Shedd served on the appellee a notice of subcontractor's lien on the building for the sum of $536, which he claimed to be due to him from Baldwin for plumbing, plumbers' materials, tinning, range setting, and work done in the construction of the building.

On December 29, 1882, the appellee paid to Baldwin the sum of $500 on account of the eighth payment and for work done subsequently to the seventh payment. This eighth payment was to be $1,500, and was to become due and payable, under the contract, on January 15, 1883.

On January 3, 1883, Baldwin gave the appellee notice of his financial embarrassment and of his inability to complete the work ; and immediately upon the same day, the appellee notified Baldwin that he would enter upon the premises and take possession of them and complete the work, in accordance with the reservations in the contract that have already been mentioned. Johnson accordingly assumed charge of the work himself, and pushed it to completion, employing Baldwin's men and using as far as it went the material already on hand provided by Baldwin, but purchasing whatever else he needed for the further construction and completion of the edifice. He kept an account of his expenditures, which was approved by the architect, and made known to Baldwin, who expressed no objection to it.

Baldwin frequently visited the building after his abandonment of the work. The building was completed on March 15, 1883.

On January 6, 1883, E. E. Jackson & Company served on the appellee a notice of subcontractor's lien for lumber furnished to the building to the value of $1,623.49 ; but no action was ever taken to enforce this claim, and presumably it was not paid by the appellee.

The appellee, after assuming control of the work, paid $53.30 for back pay to laborers employed by Baldwin, who refused to go on with the work unless these wages were paid to them. And on July 9, 1883, after the completion of the building, he settled with Shedd, who made demand for the satisfaction of his claim in accordance with the notice which he had given on December 22, 1882, by the payment to him of $424.25, upon which Shedd gave his receipt in discharge of the lien and of all claim and demand.

The whole amount thus paid out by the appellee was $12,902.47, which was $399.47 in excess of the price stipulated by the contract to be paid ; or, if the sum of $53.30 paid as back pay to the laborers be rejected, an excess of $349.17.

It should be added that the work was completed in accordance with the specifications; but that the appellee neither received nor requested from the architect any final certificate such as was required by the contract as a preliminary to the last payment therein provided to be made to the contractor.

Under these circumstances, the appellee declined to pay the acceptance given to the appellants, on the ground that the condition annexed to it had never been performed, and that therefore the acceptance had never become absolute and binding upon the appellee. Upon the agreed statement of facts, the court below sustained this contention ; and, as already stated, rendered a judgment in favor of the defendant, from which the plaintiffs have appealed.

*Mr. Andrew B. Duvall* for the appellants.

*Mr. Leigh Robinson* for the appellee.

Mr. Justice MORRIS delivered the opinion of the Court:

It is objected here at the outset on behalf of the appellee, that this case should have been brought up on bill of exceptions, and that there is no such bill in the record. We do not deem it necessary to decide this question, inasmuch as we think that the case can be more satisfactorily disposed of on its merits.

It is conceded in the agreed statement of facts that the appellee paid more for his house than he had contracted to pay. Therefore, if he should be held liable to the appellants in this suit, it would be practically the requirement of double payment by him to the extent of this claim. This, however, is no sufficient objection to the enforcement of the claim, if the appellee has made himself legally liable for it; but it is a sufficient reason to induce a careful examination of the circumstances of the case.

The order given by the contractor Baldwin, which is the foundation of the claim, requested the payment of $400 to the appellants, when the last (or ninth) payment on account of the house became due to him (Baldwin). Johnson accepted this order conditionally. Had his acceptance been unconditional, it is quite plain that if the ninth or last payment on account of the house never became due to Baldwin, the liability of Johnson on the acceptance would never have attached. By his conditional acceptance the appellee expressly made his liability dependent on the performance by Baldwin of all the conditions of the contract between the latter and himself. Upon the performance of those conditions, the right of Baldwin to the ninth and last payment depended. If those conditions failed, the payment could not be earned, and the acceptance never could become a liability. Now, the conditions did fail, and the ninth and last payment never was earned by Baldwin.

When Baldwin abandoned the work, and the appellee, in pursuance of the express terms of their contract, assumed charge and control of it in his own right on January 3, 1883, the eighth instalment of the contract money had not become due and payable; and presumably the work for which that instalment was to be paid had not been completed. It is not apparent, therefore, that he ever did or could have done any work or provided any material for which he could have become entitled to the whole or to any portion of the ninth and last payment. Under the terms of his contract, when he abandoned the work, all claim by him ceased and was at an end; and he could not justly or equitably have advanced any claim, when he had done nothing for which to merit payment. The appellants took the risk of the completion of the work by the contractor, and when the contractor failed them before any portion of the money was earned out of which their claim was to be paid, their claim, so far as that fund was concerned, necessarily failed with him. The fund was never created, upon the creation of which alone the acceptance was to be paid. Consequently it seems to be very plain that the liability of the acceptor never accrued.

It is argued, however, that the fund was in fact created, and, perhaps unintentionally, misapplied by the appellee. For complaint is made, that, if the appellee had not paid to Baldwin the sum of $500, which he paid to him on December 29, 1882, on account of the eighth payment, in advance of the date of the maturity of that instalment, which was January 15, 1883, and had retained that sum, he would have had, on the completion of the work, enough to satisfy the claim of the appellants. But the appellants had no interest in this eighth payment. It was no concern of theirs when or to whom the appellee paid it. If it be assumed that they had any interest at all in that matter, it was only that the instalment should be paid, or at least earned—and if earned, it is not apparent why it should not have been

paid; for until that instalment was paid or earned, no possible right could arise to the ninth payment, in which the appellants *were* interested, and from which their claim was to be paid.

Provision was made in the building contract between Johnson and Baldwin, that, in the event of the abandonment of the work by the latter and its assumption and completion by the appellee as the owner of the property, if there remained any balance of money in the hands of the appellee "in respect of work done during the time of the defaulting contractor," such balance should belong to the persons legally representing the contractor.   This provision, construed most favorably for the appellants, means that the residue of money, if any, in the hands of the appellee must be paid to the subcontractors, so far as their claims require this application of the fund.   If we disallow the amount paid by him for arrears of pay to the laborers ($53.30), the appellee had in his hands at the time of the completion of the work only $75.08.   For when he subsequently paid Shedd $424.25 in satisfaction of the claim of the latter, there was an overpayment by him of $349.17 upon the whole amount of the contract.   The payment to Shedd over and above the sum of $75.08, so far as the appellants are concerned, was a voluntary payment on the part of the appellee which did not affect their rights in any manner.   And so the controversy at last is narrowed down to the question, whether the sum of $75.08, the residue in his hands, should have been paid by the appellee to Shedd or to the appellants.

We think he was justified in paying it to Shedd.   Shedd had a lien which antedated the ninth payment that was to be made to Baldwin.   Under the contract between Johnson and Baldwin, that ninth payment never could become payable to Baldwin as long as Shedd's lien was outstanding. The architect's certificate as a prerequisite to the payment we regard as of no consequence.   It might have been dispensed with.   It was rendered unnecessary in this case.   Its

purpose was to assure the owner of the property that there were no liens outstanding against the property.   If the owner had notice otherwise of liens outstanding, the certificate of the architect was unnecessary for the purpose.   The purpose of the certificate and of the notice which it was to give, was to enable the owner to protect himself against these liens, to withhold the money due until they were discharged, or to pay them out of that money.   The statutory lien of Shedd was evidently superior to the rights of Baldwin and his assignees in the ninth payment, and the appellee was undoubtedly entitled to withhold that instalment until the lien was discharged, or to discharge it himself from the money in his hands.   Not until it was discharged could the acceptance become due and payable.

We are entirely satisfied, therefore, that the decision of the court below was right, and *should be affirmed, with costs; and it is so ordered.*